AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**Western** DISTRICT OF **Texas**

Filed 9-18-06
Clerk, U. S. District Court
Western District of Texas
By _____ Deputy

UNITED STATES OF AMERICA

v.

Arturo Arzate, Jr.

**CRIMINAL COMPLAINT**

CASE NUMBER: 06-4455m

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **November 2005 to September 15, 2006** in El Paso County, in the Western District of **Texas** defendant did, (Track Statutory Language of Offense)

(1) Knowingly and intentionally conspire to possess with intent to distribute a controlled substance; to-wit: cocaine, in excess of five (5) kilograms and (2) being a public official, to-wit: a Border Patrol Agent with the United States Department of Homeland Security-Custom and Border Protection did corruptly demand, seek, receive and accept a thing of value, to-wit: United States currency in return for being induced to do or omit to do an act in violation of the official duty of the official.

in violation of Title **21** United States Code, Section(s) **846, 841 (a)(1) and 18 United States Code §201**

I further state that I am a(n) **Special Agent, FBI** and that this complaint is based on the following facts:
Official Title

See Attached Probable Cause Statement hereby incorporated by reference as if fully restated herein.

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant
Kyle Fisher, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

**September 18, 2006** at **El Paso, Texas**
Date                                                              City and State

Richard P. Mesa                                     _____
Name & Title of Judicial Officer                 Signature of Judicial Officer

PROBABLE CAUSE STATEMENT

I, Kyle Fisher, hereinafter referred to as Complainant, am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and assigned to investigate violations of Federal Criminal Law, to include Public Corruption and Drug violations.

As a SA with the FBI, I have received training in investigating violations of federal statutes including bribery of public officials. The information contained in this statement is a compilation of information developed during an investigation conducted by the Complainant, other Agents of the Federal Bureau of Investigation, and Agents of Department of Homeland Security-Office of Inspector General (DHS-OIG). The information contained herein is offered in support of an arrest warrant for the arrest of ARTURO ARZATE, JR. for conspiracy to possess with the intent to distribute and distribution of a controlled substance and bribery of a public official. This complaint does not contain all the information known to Complainant.

In November 2005, an FBI cooperating individual (CI) began providing information concerning Arturo Arzate, Jr. (Arzate), a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Customs and Border Protection (CBP). The CI identified David Soto (deceased) a local drug trafficker who the CI had observed meeting Arzate. During this meeting, the CI heard Soto and Arzate discussing moving loads of narcotics through the Border Patrol checkpoint located on U.S. Highway 62/180 in El Paso County, Texas. According to the CI, Soto paid Arzate to allow loads of narcotics to pass through the checkpoint, without inspection.

On April 23, 2006, A DHS-OIG Cooperating Witness (DHS CW 1) met with Arturo Arzate, Jr., in El Paso County, Texas. During this meeting, DHS CW 1 and Arzate discussed the smuggling of 200 to 300 pounds of marijuana through the U.S. Border Patrol Checkpoint

1    located on U.S. Highway 62/180 in El Paso County, Texas.

2           On April 24, 2006, DHS CW 1 and Arzate met at a bar in El Paso, Texas, and agreed that

3    Arzate would allow the DHS CW 1 to transport 200 pounds of marijuana through the U.S.

4    Border Patrol 62/180 Checkpoint without inspection while Arzate was working at the

5    checkpoint. Arzate and DHS CW 1 agreed that Arzate would be paid $50 for every pound of

6    marijuana transported through the checkpoint.

7           On May 3, 2006, at approximately 9:30 pm, El Paso County Sheriff's Office (EPCSO)

8    Detective Jose Luis Rivera, acting in an undercover (UC 1) capacity, and the DHS-OIG CW 1,

9    traveled through the USBP 62/180 Checkpoint in a Dodge flatbed pickup truck which Arzate

10   believed contained the load of marijuana.. According to Detective Rivera, Arzate stood at the

11   driver's side window of the vehicle as it passed the US 62/180 Checkpoint and waved the vehicle

12   through.

13          On May 5, 2006 at approximately 1:18 pm, UC 1 and DHS CW 1 met with Arzate.

14   Arzate entered a vehicle driven by UC 1. Once inside the vehicle, UC 1 thanked Arzate for his

15   assistance and gave Arzate a bank bag containing $10,000 (US Currency). UC 1 stated that he

16   was pleased, and requested Arzate's assistance in the future. Arzate agreed to provide further

17   assistance in the smuggling, transportation and distribution of controlled substances. This

18   meeting was consensually recorded.

19          On May 26, 2006 at approximately 7:45 a.m., Arzate contacted DHS CW 1 asking if

20   he/she was ready to transport narcotics that day. At approximately 9:56 a.m., Arzate contacted

21   DHS CW 1 who told Arzate that he/she had the narcotics ready, and the two agree to meet at a

22   restaurant approximately forty (40) minutes after the call. At approximately 10:43 a.m., UC 1

23   and DHS CW 1 met with Arzate at the Arby's Restaurant located at 445 Raynolds, El Paso,

1  Texas. This meeting was consensually monitored. During this meeting, Arzate agreed to allow

2  six (6) kilograms (kg) of cocaine to pass through the US 62/180 Border Patrol Checkpoint

3  without inspection for a fee of $1,000 (US Currency) per kilogram, while he was on duty at the

4  checkpoint. Arzate told UC 1 to drive through the US 62/180 Checkpoint at approximately 6:15

5  p.m. that evening. At approximately 3:55 p.m., Arzate contacted DHS CW 1 who stated that

6  he/she had six (6) kilograms of cocaine and informed Arzate that he/she and UC 1 would be in

7  the same vehicle that was used on May 3, 2006. At approximately 4:41 p.m., Arzate contacted

8  DHS CW 1 and requested the DHS CW 1 come through the checkpoint an hour earlier. DHS

9  CW 1 told Arzate that he/she was still waiting for the vehicle, and the two agreed to cross at the

10 original time.

11     UC 1 and DHS CW 1 drove the Dodge flatbed pickup truck through the US 62/180

12 Checkpoint at approximately 6:15 p.m. with six (6) kilograms of cocaine concealed in a hidden

13 compartment under the bed of the truck. UC 1 stated Arzate stood at the driver's side window of

14 the vehicle as it passed the US 62/180 Checkpoint and waved the vehicle through. UC 1 stated

15 Arzate said, "Gracias," as UC 1 drove through the checkpoint.

16     On May 31, 2006 at approximately 9:00 a.m., DHS CW 1 called Arzate to arrange a place

17 and time to provide Arzate with a payment of $6,000 (US Currency) for allowing the six

18 kilograms of cocaine to pass through the 62/180 Checkpoint on May 26, 2006. Arzate met with

19 UC 1 at approximately 10:00 a.m. and the meeting was consensually recorded. Arzate entered

20 UC 1's vehicle where UC 1 provided Arzate with a payment of $6,000 (US Currency).

21     On June 27, 2006, UC 1 introduced an FBI Undercover Agent (UCA) to Arzate as 'Don

22 Carlos" as UC 1's superior. During this meeting, they discussed the transportation of 100

23 kilograms of cocaine through the checkpoint where Arzate was going to be working.

1   On September 14, 2006, UC1 and Arzate met in a parking lot located at the corner of
2   Pellicano and Lee Trevino, in El Paso, Texas. At the meeting (which was consensually
3   recorded) they discussed the purchase of a "cuadrito" (a coded reference to a kilogram of
4   cocaine). Arzate offered to act as a "broker" to obtain the kilogram of cocaine and in the presence
5   of UC 1, Arzate called an unknown female associate to arrange for the delivery of the kilogram
6   of cocaine. Arzate advised UC1 that the price of the kilogram of cocaine would be $13,500.00.
7   Shortly thereafter, an unknown female who reference to herself as "Sobrina" (niece) called UC 1,
8   and discussed the purchase of the kilogram of cocaine, but stated that the cocaine would not be
9   available until Monday (September 18, 2006).
10