```
 1                   IN THE UNITED STATES DISTRICT COURT

 2                      WESTERN DISTRICT OF TEXAS

 3                         EL PASO DIVISION

 4

 5   UNITED STATES OF AMERICA              No. EP-06-CR-1853-FM

 6   v.                                    El Paso, Texas

 7   ARTURO ARZATE, JR.                    March 25, 2008

 8

 9

10                         PLEA OF GUILTY

11               BEFORE THE HONORABLE FRANK MONTALVO

12                  UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:

16   For the Government:   Juanita Fielden
                           Assistant United States Attorney
17                         700 East San Antonio, Suite 200
                           El Paso, Texas 79901
18

19   For the Defendant:    Robert R. Harris
                           Attorney at Law
20                         1100 Montana Ave., Suite 202
                           El Paso, Texas 79902
21

22

23       Proceedings recorded by stenotype.  Transcript produced by

24   computer-aided transcription.

25
```

10:59  1            (Esperanza Gallegos, Spanish Interpreter, present to

2      interpret for Defendants Sandoval, Ramirez, Bastedas, Estrella,

3      Madrigal and Rodriguez.)

4            THE CLERK:  EP-06-CR-1853, Arturo Arzate, Jr.;

5      EP-08-CR-108, Eduardo Sandoval Escarzaga; EP-08-CR-248, Samuel

6      Dominguez, Jr.; EP-08-CR-110, Esteban Ramirez-Pena;

7      EP-08-CR-201, Carlos Aaron Bastedas-Chacon; EP-08-CR-322,

8      Abraham Estrella-Moreno; EP-08-CR-327, Salvador

9      Madrigal-Escamilla; and EP-08-CR-344, Jesus Rodriguez-Saucedo.

10           MS. FIELDEN:  Juanita Fielden for the government on

11     Arturo Arzate.

12           THE COURT:  Good morning, Ms. Fielden.

13           MR. HARRIS:  Good morning, Your Honor.  Robert Harris

14     for Mr. Arzate.  We are ready.

15           THE COURT:  Good morning, Mr. Harris.

16           MR. FRANCO:  Antonio Franco on behalf of the

17     United States in all the other matters, Your Honor.

18           MS. ROMERO:  Good morning, Your Honor.  Marie

19     Romero-Martinez for Mr. Sandoval and Mr. Dominguez.  We are

20     ready.

21           THE COURT:  Good morning, Ms. Romero.

22           MR. HOLGUIN:  Good morning, Your Honor.  Edgar Holguin

23     for Mr. Ramirez and Mr. Bastedas, ready.

24           THE COURT:  Good morning, Mr. Holguin.

25           MS. RODRIGUEZ:  Good morning, Your Honor.  Rita

11:00  1    Rodriguez standing in for Reggie Trejo on behalf of

2    Mr. Estrella.  I am here representing Mr. Madrigal, and I am

3    standing in for Mr. Castaneda on behalf of Jesus Rodriguez, and

4    we are ready.

5           THE COURT:  Good morning, Ms. Rodriguez.

6           Adriana, place everyone under oath, please.

7           THE CLERK:  Please raise your right hand.

8           (Defendants sworn.)

9           THE COURT:  Mr. Arzate, what is your full and correct

10    name, sir?

11           DEFENDANT ARZATE:  Arturo Arzate.

12           THE COURT:  Mr. Sandoval, what is your full and

13    correct name, sir, please?

14           DEFENDANT SANDOVAL:  Eduardo Sandoval Escarzaga.

15           THE COURT:  Mr. Dominguez, what is your full and

16    correct name, sir, please?

17           DEFENDANT DOMINGUEZ:  Samuel Dominguez, Jr.

18           THE INTERPRETER:  I'm sorry, Your Honor, the

19    interpreter -- the defendant does not require an interpreter.

20           THE COURT:  That's all right.  It helps.  I am getting

21    hard of hearing at my old age, so I need to be reinforced.

22           Mr. Ramirez, what is your full and correct name, sir?

23           DEFENDANT RAMIREZ:  Esteban Ramirez-Pena.

24           THE COURT:  Mr. Bastedas, what is your full and

25    correct name, sir?

11:02 1                 DEFENDANT BASTEDAS:  Carlos Aaron Bastedas-Chacon.

2                 THE COURT:  Mr. Estrella, what is your full and

3        correct name, sir?

4                 DEFENDANT ESTRELLA:  Abraham Estrella-Moreno.

5                 THE COURT:  You have been in front of me before,

6        haven't you?

7                 DEFENDANT ESTRELLA:  Yes, Your Honor.

8                 THE COURT:  That's what I thought.

9                 Mr. Madrigal, what is your full and correct name, sir?

10                 DEFENDANT MADRIGAL:  Salvador Madrigal-Escamilla.

11                 THE COURT:  Mr. Rodriguez, what is your full and

12        correct name, sir?

13                 DEFENDANT RODRIGUEZ:  Jesus Rodriguez-Saucedo.

14                 THE COURT:  Mr. Harris, have you had enough time to

15        discuss the case with your client?

16                 MR. HARRIS:  Yes, Your Honor, we have.

17                 THE COURT:  How about you, Ms. Romero?

18                 MS. ROMERO:  I have, Your Honor.

19                 THE COURT:  Mr. Holguin?

20                 MR. HOLGUIN:  Yes, sir.

21                 THE COURT:  Ms. Rodriguez?

22                 MS. RODRIGUEZ:  Yes, Your Honor.

23                 THE COURT:  Based upon the discussion you have had

24        with your respective clients, is there any question in your

25        mind about your client's mental competency to plead guilty this

11:03  1    morning?  Mr. Harris?

2              MR. HARRIS:  None, Your Honor.

3              MS. ROMERO:  No, Your Honor.

4              THE COURT:  Ms. Romero?

5              Mr. Holguin?

6              MR. HOLGUIN:  No, Your Honor.

7              THE COURT:  Ms. Rodriguez?

8              MS. RODRIGUEZ:  No, Your Honor.

9              THE COURT:  Do you believe your client to have both a

10   factual as well as a rational understanding of the proceedings

11   pending and sufficient ability to discuss them with you with a

12   reasonable degree of rational understanding?  Mr. Harris?

13             MR. HARRIS:  Yes, Your Honor.

14             THE COURT:  Ms. Romero?

15             MS. ROMERO:  Yes, Your Honor.

16             THE COURT:  Mr. Holguin?

17             MR. HOLGUIN:  Yes, Your Honor.

18             THE COURT:  Ms. Rodriguez?

19             MS. RODRIGUEZ:  Yes, Your Honor.

20             THE COURT:  Ms. Fielden, is there anything in the

21   government's file in Mr. Arzate's case that may suggest that

22   Mr. Arzate is not competent to plead guilty today?

23             MS. FIELDEN:  No, Your Honor.

24             THE COURT:  Mr. Franco, what about the other cases?

25             MR. FRANCO:  No, Your Honor.

11:04  1              THE COURT:  Mr. Arzate, are you suffering from any

        2      kind of illness today, bad headaches, dizzy spells; in other

        3      words, are you feeling sick in any way at all?

        4              DEFENDANT ARZATE:  No, sir.

        5              THE COURT:  How about you, Mr. Sandoval?

        6              DEFENDANT SANDOVAL:  No, sir.

        7              THE COURT:  Mr. Dominguez?

        8              DEFENDANT DOMINGUEZ:  No, sir.

        9              THE COURT:  Mr. Ramirez?

       10              DEFENDANT RAMIREZ:  No, sir.

       11              THE COURT:  Mr. Bastedas?

       12              DEFENDANT BASTEDAS:  No, sir.

       13              THE COURT:  Mr. Estrella?

       14              DEFENDANT ESTRELLA:  No, sir.

       15              THE COURT:  Mr. Madrigal?

       16              DEFENDANT MADRIGAL:  No, sir.

       17              THE COURT:  Mr. Rodriguez?

       18              DEFENDANT RODRIGUEZ:  No, sir.

       19              THE COURT:  Are you suffering from any kind of mental

       20      or emotional difficulties, anxiety, depression, perhaps you are

       21      seeing a psychiatrist, anything like that, anything that may

       22      affect your ability to concentrate and pay attention to what we

       23      are doing here this morning?  Mr. Arzate?

       24              DEFENDANT ARZATE:  No, sir.

       25              THE COURT:  Mr. Sandoval?

11:05  1        DEFENDANT SANDOVAL:  No, sir.

2        THE COURT:  Mr. Dominguez?

3        DEFENDANT DOMINGUEZ:  No, sir.

4        THE COURT:  Mr. Ramirez?

5        DEFENDANT RAMIREZ:  No, sir.

6        THE COURT:  Mr. Bastedas?

7        DEFENDANT BASTEDAS:  No, sir.

8        THE COURT:  Mr. Estrella?

9        DEFENDANT ESTRELLA:  No, sir.

10        THE COURT:  Mr. Madrigal?

11        DEFENDANT MADRIGAL:  No, sir.

12        THE COURT:  Mr. Rodriguez?

13        DEFENDANT RODRIGUEZ:  No, sir.

14        THE COURT:  Are you taking any kind of medication or

15   drugs or perhaps you ate or drank something before you came

16   here this morning that, again, may affect your ability to

17   understand what we are doing here today?  Mr. Arzate?

18        DEFENDANT ARZATE:  No, sir.

19        THE COURT:  Mr. Sandoval?

20        DEFENDANT SANDOVAL:  No, sir.

21        THE COURT:  Mr. Dominguez?

22        DEFENDANT DOMINGUEZ:  No, sir.

23        THE COURT:  Mr. Ramirez?

24        DEFENDANT RAMIREZ:  No, sir.

25        THE COURT:  Mr. Bastedas?

11:05   1                DEFENDANT BASTEDAS:  No, sir.

2                THE COURT:  Mr. Estrella?

3                DEFENDANT ESTRELLA:  No, sir.

4                THE COURT:  Mr. Madrigal?

5                DEFENDANT MADRIGAL:  No, sir.

6                THE COURT:  Mr. Rodriguez?

7                DEFENDANT RODRIGUEZ:  No, sir.

8                THE COURT:  I am asking you all these questions

9        because I need to make sure you understand everything we are

10       doing here today.  I am going to be saying a lot of things to

11       you.  I am going to be asking you a lot of things.  I need to

12       make sure you understand everything that I am talking to you

13       about.

14                If at any point in time I say something to you you

15       don't understand, let me know, I will be happy to explain it or

16       clarify it.  Or if you want to talk to your lawyer before you

17       answer one of my questions, let me know, and I will let you

18       have whatever time you need to talk to your lawyer in private.

19                Keep one thing in mind:  Each one of you is under

20       oath.  So every time you open your mouth to talk to me, you got

21       to make sure you are speaking the truth.  Better for you to be

22       quiet than to lie to me, very simple deal.  This is not rocket

23       science.  You lie to me, you are going to get charged with

24       another federal offense.  And you are going to serve more time

25       in prison.

11:06  1              Do you understand that, Mr. Arzate?

       2              DEFENDANT ARZATE:  Yes, sir.

       3              THE COURT:  Mr. Sandoval, do you understand that?

       4              DEFENDANT SANDOVAL:  Yes, sir.

       5              THE COURT:  Mr. Dominguez?

       6              DEFENDANT DOMINGUEZ:  Yes, sir.

       7              THE COURT:  Mr. Ramirez?

       8              DEFENDANT RAMIREZ:  Yes.

       9              THE COURT:  Mr. Bastedas?

      10              DEFENDANT BASTEDAS:  Yes, sir.

      11              THE COURT:  Mr. Estrella?

      12              DEFENDANT ESTRELLA:  Yes, sir.

      13              THE COURT:  Mr. Madrigal?

      14              DEFENDANT MADRIGAL:  Yes, sir.

      15              THE COURT:  Mr. Rodriguez?

      16              DEFENDANT RODRIGUEZ:  Yes, sir.

      17              THE COURT:  I am going to ask the lawyer for the

      18   government now to go over the allegations the government is

      19   making against each one of you and to tell you what the

      20   possible penalties are that each one of you face by pleading

      21   guilty to those allegations.

      22              A term each of the lawyers for the government are

      23   going to use in each of your cases is "supervised release."

      24   What "supervised release" is is a period of time following any

      25   sentence of incarceration during which you have to comply with

11:07   1    certain rules and conditions and your failure to do that will

2    in all likelihood result in you going back to prison.

3              Mr. Arzate, do you understand that, sir?

4              DEFENDANT ARZATE:  Yes, sir.

5              THE COURT:  Mr. Sandoval?

6              DEFENDANT SANDOVAL:  Yes, sir.

7              THE COURT:  Mr. Dominguez?

8              DEFENDANT DOMINGUEZ:  Yes, sir.

9              THE COURT:  Mr. Ramirez?

10             DEFENDANT RAMIREZ:  Yes, sir.

11             THE COURT:  Mr. Bastedas?

12             DEFENDANT BASTEDAS:  Yes, sir.

13             THE COURT:  Mr. Estrella?

14             DEFENDANT ESTRELLA:  Yes, sir.

15             THE COURT:  Mr. Madrigal?

16             DEFENDANT MADRIGAL:  Yes, sir.

17             THE COURT:  Mr. Rodriguez?

18             DEFENDANT RODRIGUEZ:  Yes, sir.

19             THE COURT:  Ms. Fielden, you may proceed, ma'am.

20             MS. FIELDEN:  Thank you, Your Honor.

21             Mr. Arzate, you are charged in a three-count

22    indictment.  Count one alleges a conspiracy to possess with

23    intent to distribute a controlled substance, the offense

24    involving 500 grams or more of a mixture or substance

25    containing a detectable amount of marijuana, a Schedule II

11:08   1   controlled substance, with intent to distribute the same.

2          The time frame of that conspiracy is --

3          THE COURT:  Marijuana or cocaine?

4          MS. FIELDEN:  This is cocaine, Your Honor.

5          THE COURT:  Okay.  I thought you said "marijuana."

6   Start again, please.

7          MS. FIELDEN:  Count one, beginning on or about

8   November 1, 2005, and continuing to on or about September 17,

9   2006, in the Western District of Texas and elsewhere, that you,

10  Arturo Arzate, and another individual knowingly, intentionally,

11  and unlawfully conspired, combined, confederated, and agreed

12  together and with each other and with others to the grand jury

13  unknown to possess a controlled substance, which offense

14  involved 500 grams or more of a mixture or substance containing

15  a detectable amount of cocaine, a Schedule II controlled

16  substance, with intent to distribute the same, contrary to

17  Title 21, United States Code, Section 841(a)(1),

18  841(b)(1)(B)(ii), all in violation of Title 21, United States

19  Code, Section 846.

20         Sir, do you understand that charge?

21         DEFENDANT ARZATE:  Yes, I do.

22         MS. FIELDEN:  The range of punishment for that

23  particular offense is that you may be imprisoned for not less

24  than five years or up to 40 years.  In addition, you may be

25  fined an amount not to exceed $2 million.  You may be placed on

11:09  1  supervised release for a period of time not greater than five

2  years and a $100 special assessment.

3        Mr. Arzate, do you understand that range of

4  punishment?

5        DEFENDANT ARZATE:  Yes, I do.

6        MS. FIELDEN:  Count one and two are the same type of

7  offense, and they are a bribery offense.  Count one [sic]

8  alleges that on or about May 5, 2006, in the Western District

9  of Texas, that you, Arturo Arzate, Jr., who at that time was a

10  public official; to wit, a Border Patrol agent with the

11  United States Department of Homeland Security, Customs & Border

12  Protection, directly and indirectly did corruptly demand, seek,

13  receive, accept, and agree to receive and accept something of

14  value; to wit, $10,000 in United States currency, personally,

15  in return for and with the intent of being induced to act and

16  omit to act -- or omit to do an act in violation of his

17  official duties, specifically to allow narcotic-laden vehicles

18  to go through a United States Border Patrol checkpoint without

19  inspection, all in violation of Title 18, United States Code,

20  Section 201(b)(2)(C).

21        Count three, which is the same type of count, alleges

22  that on or about June 1, 2006, in the Western District of

23  Texas, that the defendant, Arturo Arzate, Jr., a public

24  official; to wit, a Border Patrol agent with the United States

25  Department of Homeland Security, Customs & Border Protection,

11:10  1    directly and indirectly did corruptly demand, seek, and

2    receive, accept, and agree to receive and accept something of

3    value; to wit, $6,000 in United States currency, personally, in

4    return for and with the intent of being induced to act and omit

5    to act -- to do an act in violation of his official duties,

6    specifically to allow narcotic-laden vehicles to go through a

7    United States Border Patrol checkpoint without inspection, all

8    in violation of Title 18, United States Code, Section

9    201(b)(2)(C).

10           Mr. Arzate, do you understand this count two and count

11   three?

12           DEFENDANT ARZATE:  Yes, I do.

13           MS. FIELDEN:  The range of punishment for both of

14   those offenses:  That you may be imprisoned not to exceed 15

15   years; you may be fined $250,000 or three times the monetary

16   equivalent of the bribe that was taken; you may be placed on

17   supervised release for up to three years; and a $100 special

18   assessment.

19           Do you understand the range of punishment?

20           DEFENDANT ARZATE:  Yes, I do.

21           THE COURT:  Thank you, Ms. Fielden.

22           Mr. Franco.

23           MR. FRANCO:  Mr. Sandoval, you stand charged in a

24   two-count indictment; however, pursuant to a plea agreement,

25   you have agreed to plead guilty to only count one of that

11:12  1  indictment, charging you with importation of a controlled

2  substance.  That charge reads as follows:  That on or about

3  December 10, 2007, in the Western District of Texas, that you

4  knowingly and intentionally imported into the United States

5  from Mexico a controlled substance, which offense involved a

6  quantity of a mixture or substance containing a detectable

7  amount of marijuana, a Schedule I controlled substance, in

8  violation of United States law.

9          Mr. Sandoval, do you understand what you are pleading

10  guilty to today?

11          DEFENDANT SANDOVAL:  Yes, I do.

12          MR. FRANCO:  The maximum sentence you face is up to

13  five years in prison, up to a $250,000 fine, at least two years

14  of supervised release, and a $100 special assessment.

15          Do you understand the potential punishment you face by

16  pleading guilty to this charge?

17          DEFENDANT SANDOVAL:  Yes, I do.

18          MR. FRANCO:  Mr. Dominguez, you also stand charged in

19  a two-count indictment; however, pursuant to a plea agreement,

20  you also are only agreeing to plead guilty to count one of that

21  indictment charging you with importation of a controlled

22  substance.

23          That charge reads as follows:  That on or about

24  January 6, 2008, in the Western District of Texas, that you

25  knowingly and intentionally imported into the United States

11:13  1   from Mexico a controlled substance, which offense involved a

2   quantity of a mixture or substance containing a detectable

3   amount of marijuana, a Schedule I controlled substance, in

4   violation of United States law.

5          Do you understand what you are pleading guilty to

6   today?

7          DEFENDANT DOMINGUEZ:  Yes, sir.

8          MR. FRANCO:  The maximum punishment you face is up to

9   five years in prison, up to a $250,000 fine, at least two years

10   of supervised release, and a $100 special assessment.

11          Do you understand the potential punishment you face by

12   pleading guilty to this charge?

13          DEFENDANT DOMINGUEZ:  Yes, sir.

14          MR. FRANCO:  Mr. Ramirez, you also stand charged in a

15   two-count indictment, and pursuant to a plea agreement, you

16   also are only pleading guilty to count one of that indictment,

17   charging you with importation of a controlled substance.

18          That charge reads as follows:  That on or about

19   December 16, 2007, in the Western District of Texas, that you

20   knowingly and intentionally imported into the United States

21   from Mexico a controlled substance, which offense involved a

22   quantity of a mixture or substance containing a detectable

23   amount of marijuana, a Schedule I controlled substance, in

24   violation of United States law.  Do you understand what you are

25   pleading guilty to, Mr. Ramirez?

11:14  1            DEFENDANT RAMIREZ:  Yes, Your Honor.

2            MR. FRANCO:  The maximum punishment you face is up to

3    five years in prison, up to a $250,000 fine, at least two years

4    of supervised release, and a $100 special assessment.

5            Do you understand the maximum punishment you face by

6    pleading guilty to this charge?

7            DEFENDANT RAMIREZ:  Yes, sir.

8            MR. FRANCO:  Mr. Bastedas, you stand charged in a

9    four-count indictment; however, pursuant to a plea agreement,

10   you are only pleading guilty to count one of that indictment

11   charging you with conspiracy to import a controlled substance.

12           That charge reads as follows:  That on or about

13   December 20, 2007, in the Western District of Texas, that you,

14   along with another individual, knowingly and intentionally and

15   unlawfully conspired, combined, confederated, and agreed

16   together and with others to the grand jury unknown to commit

17   offenses against the United States, in violation of

18   United States law.

19           That is to say that you conspired to import a

20   controlled substance, which offense involved 50 kilograms or

21   more of a mixture or substance containing a detectable amount

22   of marijuana, a Schedule I controlled substance, into the

23   United States from Mexico, in violation of United States law.

24           Do you understand what you are pleading guilty to

25   today?

11:15  1            DEFENDANT BASTEDAS:  Yes, sir.

2            MR. FRANCO:  The maximum punishment you face is up to

3      20 years in prison, up to a $1 million fine, at least three

4      years of supervised release, and a $100 special assessment.

5            Do you understand the maximum punishment you face by

6      pleading guilty to this charge?

7            DEFENDANT BASTEDAS:  Yes, sir.

8            MR. FRANCO:  Mr. Estrella, you stand charged in a

9      one-count indictment and are pleading guilty to that

10     indictment, charging you with attempted illegal reentry into

11     the United States.

12           That charge reads as follows:  That on or about

13     January 15, 2008, in the Western District of Texas, that you,

14     an alien, knowingly and intentionally attempted to enter the

15     United States after having been denied admission, excluded,

16     deported, and removed therefrom on or about June 22, 2007, and

17     not having obtained the express consent of the Attorney General

18     of the United States and the Secretary of Homeland Security, to

19     re-apply for admission thereto, and did commit an overt act

20     that was a substantial step towards entering the United States

21     by trying to circumvent the primary inspection booth and

22     eluding inspection, in violation of United States law.

23           Mr. Estrella, do you understand what you are pleading

24     guilty to today?

25           DEFENDANT ESTRELLA:  Yes, sir.

11:16  1          MR. FRANCO:  In your case, the government has filed a

2      notice of intent to seek an increased statutory penalty.  That

3      means that the maximum punishment you face is up to 20 years in

4      prison, up to a $250,000 fine, not more than three years of

5      supervised release, and a $100 special assessment.

6          Do you understand the maximum punishment you face by

7      pleading guilty to this charge?

8          DEFENDANT ESTRELLA:  Yes, sir.

9          MR. FRANCO:  Mr. Madrigal, you also stand charged in a

10     one-count indictment charging you with attempted illegal

11     reentry into the United States.  That charge reads as follows:

12     That on or about January 13, 2008, in the Western District of

13     Texas, that you, an alien, knowingly and intentionally

14     attempted to enter the United States after having been denied

15     admission, excluded, deported, and removed therefrom on or

16     about October 26, 1995, and not having obtained the express

17     consent of the Attorney General of the United States and the

18     Secretary of Homeland Security to re-apply for admission

19     thereto and did commit an overt act that was a substantial step

20     towards entering the United States, by presenting a Form

21     DSP-150 border crossing card, bearing the name and photograph

22     of another to a Customs & Border Protection officer, in

23     violation of United States law.

24         Do you understand what you are pleading guilty to?

25         DEFENDANT MADRIGAL:  Yes, sir.

11:17  1             MR. FRANCO:  In your case, the government has filed a

2      notice of intent to seek an increased statutory penalty, which

3      means that the maximum punishment you face is up to ten years

4      in prison, up to a $250,000 fine, not more than three years of

5      supervised release, and a $100 special assessment.

6             Do you understand the maximum punishment you face by

7      pleading guilty to this charge?

8             DEFENDANT MADRIGAL:  Yes, sir.

9             MR. FRANCO:  Mr. Rodriguez, you stand charged in a

10     two-count indictment.  However, pursuant to a plea agreement,

11     you are agreeing to plead guilty to only count one of that

12     indictment, charging you with importation of a controlled

13     substance.

14            That charge reads as follows:  That on or about

15     January 11, 2008, in the Western District of Texas, that you

16     knowingly and intentionally imported into the United States

17     from Mexico a controlled substance, which offense involved a

18     quantity of a mixture or substance containing a detectable

19     amount of marijuana, a Schedule I controlled substance, in

20     violation of United States law.

21            Do you understand what you are pleading guilty to

22     today?

23            DEFENDANT RODRIGUEZ:  Yes, sir.

24            MR. FRANCO:  The maximum punishment you face is up to

25     five years in prison, at least -- and up to a $250,000 fine, at

11:18   1   least two years of supervised release, and a $100 special

2   assessment.

3          Do you understand the maximum punishment you face by

4   pleading guilty to this charge?

5          DEFENDANT RODRIGUEZ:  Yes.

6          MR. FRANCO:  Thank you, Your Honor.

7          THE COURT:  Thank you, Mr. Franco.

8          Mr. Arzate, are you here this morning to plead guilty

9   voluntarily?

10          DEFENDANT ARZATE:  I'm sorry, sir?  I couldn't hear

11   you.

12          THE COURT:  Are you here this morning to plead guilty

13   voluntarily?

14          DEFENDANT ARZATE:  Yes, sir.

15          THE COURT:  How about you, Mr. Sandoval?

16          DEFENDANT SANDOVAL:  Yes, sir.

17          THE COURT:  Mr. Dominguez?

18          DEFENDANT DOMINGUEZ:  Yes, sir.

19          THE COURT:  Mr. Ramirez?

20          DEFENDANT RAMIREZ:  Yes, Your Honor.

21          THE COURT:  Mr. Bastedas?

22          DEFENDANT BASTEDAS:  Yes, sir.

23          THE COURT:  Mr. Estrella?

24          DEFENDANT ESTRELLA:  Yes, sir.

25          THE COURT:  Mr. Madrigal?

11:19  1                DEFENDANT MADRIGAL:  Yes, sir.

2                THE COURT:  Mr. Rodriguez?

3                DEFENDANT RODRIGUEZ:  Yes, sir.

4                THE COURT:  Anyone force you, threaten you, or coerce

5       you in any way into pleading guilty this morning?  Mr. Arzate?

6                DEFENDANT ARZATE:  No, sir.

7                THE COURT:  Mr. Sandoval?

8                DEFENDANT SANDOVAL:  No, sir.

9                THE COURT:  Mr. Dominguez?

10               DEFENDANT DOMINGUEZ:  No, sir.

11               THE COURT:  Mr. Ramirez?

12               DEFENDANT RAMIREZ:  No, sir.

13               THE COURT:  Mr. Bastedas?

14               DEFENDANT BASTEDAS:  No, sir.

15               THE COURT:  Mr. Estrella?

16               DEFENDANT ESTRELLA:  No, sir.

17               THE COURT:  Mr. Madrigal?

18               DEFENDANT MADRIGAL:  No, sir.

19               THE COURT:  Mr. Rodriguez?

20               DEFENDANT RODRIGUEZ:  No, sir.

21               THE COURT:  Mr. Arzate, has anyone made any promises

22      to you or offered you any deals to make you plead guilty in

23      your case that I have not been told about?

24               DEFENDANT ARZATE:  No, sir.

25               THE COURT:  Mr. Estrella, has anyone offered you

11:20  1   anything or made any deals with you to make you plead guilty in

       2   your case that I have not been told about?

       3           DEFENDANT ESTRELLA:  Nobody, sir (In English).

       4           THE COURT:  How about you, Mr. Madrigal, anyone offer

       5   you anything, any deals, any offers to make you plead guilty in

       6   your case that I have not been told about?

       7           DEFENDANT MADRIGAL:  No, sir.

       8           THE COURT:  Mr. Sandoval, Mr. Dominguez, Mr. Ramirez,

       9   Mr. Bastedas, and Mr. Rodriguez, the five of you are pleading

      10   guilty pursuant to a plea agreement with the government in each

      11   of your cases.  About that plea agreement, let me ask you, did

      12   you have enough time to talk to your lawyer about the plea

      13   agreement before you signed it so that you made sure you

      14   understood the terms and conditions of that plea agreement?

      15   Mr. Sandoval?

      16           DEFENDANT SANDOVAL:  Yes, sir.

      17           THE COURT:  Mr. Dominguez?

      18           DEFENDANT DOMINGUEZ:  Yes, sir.

      19           THE COURT:  Mr. Ramirez?

      20           DEFENDANT RAMIREZ:  Yes, sir.

      21           THE COURT:  Mr. Bastedas?

      22           DEFENDANT BASTEDAS:  Yes, sir.

      23           THE COURT:  Mr. Rodriguez?

      24           DEFENDANT RODRIGUEZ:  Yes, sir.

      25           THE COURT:  Has anything been offered to you to make

11:21  1   you plead guilty in your case that is not written down, in

2   other words, that is not included on the plea agreement

3   document you signed?  Mr. Sandoval?

4           DEFENDANT SANDOVAL:  No, sir.

5           THE COURT:  Mr. Dominguez?

6           DEFENDANT DOMINGUEZ:  No, sir.

7           THE COURT:  Mr. Ramirez?

8           DEFENDANT RAMIREZ:  No, sir.

9           THE COURT:  Mr. Bastedas?

10          DEFENDANT BASTEDAS:  No, sir.

11          THE COURT:  Mr. Rodriguez?

12          DEFENDANT RODRIGUEZ:  No, sir.

13          THE COURT:  Understanding the allegations the

14   government is making against you, understanding the penalties

15   you face by pleading guilty to those allegations, and

16   understanding that you are here voluntarily to plead guilty

17   today, how do you plead to the allegations the government is

18   making against you, guilty or not guilty?  Mr. Arzate?

19          DEFENDANT ARZATE:  Guilty.

20          THE COURT:  Mr. Sandoval?

21          DEFENDANT SANDOVAL:  Guilty.

22          THE COURT:  Mr. Dominguez?

23          DEFENDANT DOMINGUEZ:  Guilty.

24          THE COURT:  Mr. Ramirez?

25          DEFENDANT RAMIREZ:  Guilty.

```
11:21  1                THE COURT:  Mr. Bastedas?

       2                DEFENDANT BASTEDAS:  Guilty.

       3                THE COURT:  Mr. Estrella?

       4                DEFENDANT ESTRELLA:  Guilty, sir.

       5                THE COURT:  Mr. Madrigal?

       6                DEFENDANT MADRIGAL:  Guilty, sir.

       7                THE COURT:  Mr. Rodriguez?

       8                DEFENDANT RODRIGUEZ:  Guilty, sir.

       9                THE COURT:  Before I accept your plea of guilty, I am

      10      going to go over the rights you are giving up by pleading

      11      guilty.  Let me ask you, first of all, have you had enough time

      12      to talk to your lawyer about your case?  Mr. Arzate?

      13                DEFENDANT ARZATE:  Yes, sir.

      14                THE COURT:  Mr. Sandoval?

      15                DEFENDANT SANDOVAL:  Yes, sir.

      16                THE COURT:  Mr. Dominguez?

      17                DEFENDANT DOMINGUEZ:  Yes, sir.

      18                THE COURT:  Mr. Ramirez?

      19                DEFENDANT RAMIREZ:  Yes, sir.

      20                THE COURT:  Mr. Bastedas?

      21                DEFENDANT BASTEDAS:  Yes, sir.

      22                THE COURT:  Mr. Estrella?

      23                DEFENDANT ESTRELLA:  Yes, sir.

      24                THE COURT:  Mr. Madrigal?

      25                DEFENDANT MADRIGAL:  Yes, sir.
```

11:22  1                   THE COURT:  Mr. Rodriguez?

       2                   DEFENDANT RODRIGUEZ:  Yes, sir.

       3                   THE COURT:  Are you satisfied with the work your

       4      lawyer has done for you up to this point in your case?

       5      Mr. Arzate?

       6                   DEFENDANT ARZATE:  Yes, sir.

       7                   THE COURT:  Mr. Sandoval?

       8                   DEFENDANT SANDOVAL:  Yes, sir.

       9                   THE COURT:  Mr. Dominguez?

      10                   DEFENDANT DOMINGUEZ:  Yes, sir.

      11                   THE COURT:  Mr. Ramirez?

      12                   DEFENDANT RAMIREZ:  Yes, sir.

      13                   THE COURT:  Mr. Bastedas?

      14                   DEFENDANT BASTEDAS:  Yes, sir.

      15                   THE COURT:  Mr. Estrella?

      16                   DEFENDANT ESTRELLA:  Yes, sir.

      17                   THE COURT:  Mr. Madrigal?

      18                   DEFENDANT MADRIGAL:  Yes, sir.

      19                   THE COURT:  Mr. Rodriguez?

      20                   DEFENDANT RODRIGUEZ:  Yes, sir.

      21                   THE COURT:  Do you understand that you are entitled to

      22      have a lawyer represent you at every step of the proceedings in

      23      your case?  And if for some reason the lawyer you have right

      24      now cannot continue to represent you, and you cannot afford to

      25      hire a lawyer to continue representing you, I will appoint

11:23   1   another lawyer to continue representing you at no cost to you?

2             Do you understand that, Mr. Arzate?

3             DEFENDANT ARZATE:  Yes, sir.

4             THE COURT:  Mr. Sandoval, do you understand that?

5             DEFENDANT SANDOVAL:  Yes, sir.

6             THE COURT:  Mr. Dominguez?

7             DEFENDANT DOMINGUEZ:  Yes, sir.

8             THE COURT:  Mr. Ramirez?

9             DEFENDANT RAMIREZ:  Yes, sir.

10            THE COURT:  Mr. Bastedas?

11            DEFENDANT BASTEDAS:  Yes, sir.

12            THE COURT:  Mr. Estrella?

13            DEFENDANT ESTRELLA:  Yes, sir.

14            THE COURT:  Mr. Madrigal?

15            DEFENDANT MADRIGAL:  Yes, sir.

16            THE COURT:  Mr. Rodriguez?

17            DEFENDANT RODRIGUEZ:  Yes, sir.

18            THE COURT:  Do you understand that under the law you

19   are presumed to be innocent, and it is the government's

20   responsibility to prove the allegations the government is

21   making against you, and the government must do that by evidence

22   beyond a reasonable doubt?

23            Do you understand that, Mr. Arzate?

24            DEFENDANT ARZATE:  Yes, sir.

25            THE COURT:  Mr. Sandoval?

11:23  1          DEFENDANT SANDOVAL:  Yes, sir.

2          THE COURT:  Mr. Dominguez?

3          DEFENDANT DOMINGUEZ:  Yes, sir.

4          THE COURT:  Mr. Ramirez?

5          DEFENDANT RAMIREZ:  Yes, sir.

6          THE COURT:  Mr. Bastedas?

7          DEFENDANT BASTEDAS:  Yes, sir.

8          THE COURT:  Mr. Estrella?

9          DEFENDANT ESTRELLA:  Yes, sir.

10          THE COURT:  Mr. Madrigal?

11          DEFENDANT MADRIGAL:  Yes, sir.

12          THE COURT:  Mr. Rodriguez?

13          DEFENDANT RODRIGUEZ:  Yes, sir.

14          THE COURT:  Do you understand that by pleading guilty

15   this morning, you are giving up the right you have to have a

16   jury hear the evidence the government has against you and have

17   the jury decide whether you are guilty or not of the

18   allegations the government is making against you?

19          By giving up that right, you are giving up the right

20   you have to have your lawyer question the witnesses the

21   government has against you.  You are also giving up the right

22   you have to challenge the evidence the government has against

23   you.  You are giving up the right you have to bring witnesses

24   to court to testify on your behalf, and you are giving up the

25   right to present any other evidence.  You are forever giving up

11:24  1    those rights because you are pleading guilty this morning.

2                Do you understand that, Mr. Arzate?

3                DEFENDANT ARZATE:  Yes, sir.

4                THE COURT:  Mr. Sandoval, do you understand that?

5                DEFENDANT SANDOVAL:  Yes, sir.

6                THE COURT:  Mr. Dominguez?

7                DEFENDANT DOMINGUEZ:  Yes, sir.

8                THE COURT:  Mr. Ramirez?

9                DEFENDANT RAMIREZ:  Yes, sir.

10               THE COURT:  Mr. Bastedas?

11               DEFENDANT BASTEDAS:  Yes, sir.

12               THE COURT:  Mr. Estrella?

13               DEFENDANT ESTRELLA:  Yes, sir.

14               THE COURT:  Mr. Madrigal?

15               DEFENDANT MADRIGAL:  Yes, sir.

16               THE COURT:  Mr. Rodriguez?

17               DEFENDANT RODRIGUEZ:  Yes, sir.

18               THE COURT:  Do you also understand that by pleading

19    guilty this morning, you are giving up the right you have to

20    remain silent?  You see, at the time of trial, you don't have

21    to testify on your own behalf.  You may if you want to do so,

22    but you don't have to.  And no one can hold against you that

23    you exercised the right to remain silent.

24               Now, by pleading guilty today, you are giving up that

25    right because you have to admit to the allegations the

11:25  1    government is making against you, and you also have to admit to

2    the facts that support those allegations.

3              Is that clear to you, Mr. Arzate?

4              DEFENDANT ARZATE:  Yes, sir.

5              THE COURT:  Is that clear to you, Mr. Sandoval?

6              DEFENDANT SANDOVAL:  Yes, sir.

7              THE COURT:  Mr. Dominguez, is that clear to you?

8              DEFENDANT DOMINGUEZ:  Yes, sir.

9              THE COURT:  Mr. Ramirez, is that clear to you?

10             DEFENDANT RAMIREZ:  Yes, sir.

11             THE COURT:  Mr. Bastedas?

12             DEFENDANT BASTEDAS:  Yes, sir.

13             THE COURT:  Mr. Estrella?

14             DEFENDANT ESTRELLA:  Yes, sir.

15             THE COURT:  Mr. Madrigal?

16             DEFENDANT MADRIGAL:  Yes, sir.

17             THE COURT:  Mr. Rodriguez?

18             DEFENDANT RODRIGUEZ:  Yes, sir.

19             THE COURT:  You also need to understand that the

20    responsibility to determine what a fair sentence is in your

21    case -- in each of your cases is my responsibility.  It is not

22    your lawyer's.  It is not the government.  It is not some

23    committee in Washington.  It is my responsibility.

24             You need to understand that, because you do not have a

25    right to withdraw your plea of guilty in your case if you are

11:26  1   dissatisfied with the sentence you receive in this case.

2               Do you understand that, Mr. Arzate?

3               DEFENDANT ARZATE:  Yes.

4               THE COURT:  Mr. Sandoval?

5               DEFENDANT SANDOVAL:  Yes, sir.

6               THE COURT:  Mr. Dominguez?

7               DEFENDANT DOMINGUEZ:  Yes, sir.

8               THE COURT:  Mr. Ramirez?

9               DEFENDANT RAMIREZ:  Yes, sir.

10              THE COURT:  Mr. Bastedas?

11              DEFENDANT BASTEDAS:  Yes, sir.

12              THE COURT:  Mr. Estrella?

13              DEFENDANT ESTRELLA:  Yes, sir.

14              THE COURT:  Mr. Madrigal?

15              DEFENDANT MADRIGAL:  Yes, sir.

16              THE COURT:  Mr. Rodriguez?

17              DEFENDANT RODRIGUEZ:  Yes, sir.

18              THE COURT:  In your case, Mr. Sandoval, Mr. Dominguez,

19   Mr. Ramirez, Mr. Bastedas, and Mr. Rodriguez, because the five

20   of you are pleading guilty pursuant to a plea agreement with

21   the government, you also need to understand that you are giving

22   up the right you have to appeal your case, save and except for

23   two very limited circumstances.

24              Those two circumstances are the following:  You can

25   appeal your case if the government engaged in illegal conduct

11:27   1   in bringing the case against you, and you can appeal your case

2   if you received ineffective assistance from your lawyer.  Other

3   than those two situations, you cannot appeal your case.

4           Mr. Sandoval, do you understand that, sir?

5           DEFENDANT SANDOVAL:  Yes, sir.

6           THE COURT:  Mr. Dominguez, do you understand that,

7   sir?

8           DEFENDANT DOMINGUEZ:  Yes, sir.

9           THE COURT:  Mr. Ramirez, do you understand that, sir?

10          DEFENDANT RAMIREZ:  Yes, sir.

11          THE COURT:  Mr. Bastedas?

12          DEFENDANT BASTEDAS:  Yes, sir.

13          THE COURT:  Mr. Rodriguez?

14          DEFENDANT RODRIGUEZ:  Yes, sir.

15          THE COURT:  I have gone over the rights that each of

16  you is giving up by pleading guilty.  This is what I need to

17  know:  Understanding the rights you are giving up by pleading

18  guilty, do you still want to go ahead with this plea of guilty,

19  yes or no?  Mr. Arzate?

20          DEFENDANT ARZATE:  Yes.

21          THE COURT:  Mr. Sandoval?

22          DEFENDANT SANDOVAL:  Yes.

23          THE COURT:  Mr. Dominguez?

24          DEFENDANT DOMINGUEZ:  Yes, sir.

25          THE COURT:  Mr. Ramirez?

11:28   1            DEFENDANT RAMIREZ:  Yes, sir.

2            THE COURT:  Mr. Bastedas?

3            DEFENDANT BASTEDAS:  Yes, sir.

4            THE COURT:  Mr. Estrella?

5            DEFENDANT ESTRELLA:  Yes, sir (In English).

6            THE COURT:  Mr. Madrigal?

7            DEFENDANT MADRIGAL:  Yes, sir.

8            THE COURT:  Mr. Rodriguez?

9            DEFENDANT RODRIGUEZ:  Yes, sir.

10            THE COURT:  Ms. Fielden, let me have the factual basis

11   of the allegations against Mr. Arzate, please.

12            MS. FIELDEN:  Yes, Your Honor.  This investigation

13   began in November of 2005, when the FBI received information

14   that the defendant, Arturo Arzate, Jr., who is a Border Patrol

15   agent with the United States Department of Homeland Security,

16   Customs & Border Protection, was allowing loads of narcotics to

17   pass through the Border Patrol checkpoint located at Highway

18   62/180 in El Paso County, Texas, and was doing this for an

19   individual by the name of David Soto.

20            After the investigation was initiated, on April 23,

21   2006, a cooperating witness met with Arzate in El Paso County

22   and discussed -- and during this meeting discussed the

23   smuggling of 200 to 300 pounds of marijuana through the

24   checkpoint at 62/180.

25            On April 24, the cooperating witness and Arzate met at

11:29   1   a bar in El Paso and agreed that Arzate would allow the CW to

2   transport 200 pounds of marijuana through the Border Patrol

3   checkpoint without inspection while Arzate was working at the

4   checkpoint.  Arzate, the -- Arzate and the CW agreed that

5   Arzate would be paid $50 for every pound of marijuana

6   transported through the checkpoint.

7           On May 3, 2006, at approximately 9:30 p.m., an El Paso

8   County Sheriff's deputy, who was acting in an undercover

9   capacity, and the CW traveled through the U.S. Border Patrol

10   checkpoint at 62/180 in a Dodge flatbed pickup, which Arzate

11   believed contained the load of marijuana.  Arzate stood at the

12   driver's side window of the vehicle as it passed through the

13   checkpoint and waved the vehicle through.

14           On May 5, 2006, the undercover agent and the CW met

15   with Arzate who entered the vehicle driven by the undercover

16   agent.  Once inside the vehicle, the undercover agent thanked

17   Arzate for his assistance and gave Arzate a bank bag containing

18   $10,000 in United States currency.  The undercover agent stated

19   he was pleased and requested Arzate's assistance in the future.

20   Arzate agreed to provide further assistance in the smuggling,

21   transportation, and distribution of controlled substance.  This

22   particular meeting was consensually recorded.

23           Then on May 26, 2006, Arzate contacted the CW and

24   asked him if he was ready to transport narcotics that day.

25   Arzate told him that he would meet him at a restaurant after --

11:31   1    in about 40 minutes.  The undercover agent and the CW met with

2    Arzate at an Arby's restaurant here in El Paso, and that

3    meeting was consensually recorded.  During this meeting, Arzate

4    agreed to allow six kilograms of cocaine to pass through the

5    62/180 Border Patrol checkpoint without inspection for a fee of

6    $1,000 per kilogram while he was on duty.  Arzate told the

7    undercover agent to drive through the 62/180 checkpoint at

8    approximately 6:15 p.m. that evening.

9         Let's see -- the UC and the CW drove the Dodge flatbed

10   through -- the pickup truck through the 62/180 checkpoint at

11   approximately 6:15 with the six kilograms of cocaine hidden in

12   a hidden compartment under the bed of the truck.  The

13   undercover agent stated Arzate stood at the driver's side

14   window of the vehicle as it passed through and waved the

15   vehicle through.  Arzate said *gracias* to the undercover agent

16   as he drove through the checkpoint.

17        On May 31, the CW called Arzate to arrange a time,

18   place to provide payment of $6,000 for this 6 kilograms of

19   cocaine that had passed through the checkpoint.  Arzate met the

20   undercover agent and the meeting was consensually recorded.

21   And he received the $6,000 in U.S. currency.

22        On September 14, the undercover and Arzate met at a

23   parking lot and negotiated for the purchase of a kilogram of

24   cocaine, which Arzate was to broker for the price of $13,500.

25   Subsequently, Mr. Arzate was arrested, gave a postarrest

11:32  1    statement where he admitted his involvement in the

2    transactions, which we have just discussed.  He also admitted

3    that he had been allowing loads of illegal drugs to pass

4    through the checkpoints since 1990 for another individual; that

5    he started dealing with David Soto and allowed him to pass

6    loads through for approximately since 2001 and was paid $3,000

7    to $7,000 per load.

8         He also admitted that on August 9 -- I should go back

9    and say that Mr. Soto was murdered in August of 2006.  But on

10   August 9, Arzate transported about 90 pounds of cocaine

11   belonging to Mr. Soto and transported it through the 62/180

12   checkpoint and traveled to Van Horn, Texas.

13        He also, after Mr. Soto was murdered, started working

14   for another individual who was, at that time, Mr. Soto's silent

15   partner and then stepped up after Mr. Soto was killed.  And

16   then on Monday, September 11, 2006, Arzate received

17   25 kilograms of cocaine, which he had again transported through

18   the 62/180 checkpoint to Van Horn, Texas.  That's all.

19        THE COURT:  Mr. Arzate, are those facts true?

20        DEFENDANT ARZATE:  Yes, sir.

21        THE COURT:  All of them?

22        DEFENDANT ARZATE:  Yes, sir.

23        THE COURT:  Mr. Franco, let me hear the factual basis

24   of the allegations against Mr. Sandoval.

25        MR. FRANCO:  Yes, Your Honor.  The government would

11:34   1   show that on or about December 10, 2007, the defendant entered

2   the United States from Mexico at the Bridge of the Americas

3   Port of Entry.  The defendant was the driver and sole occupant

4   of a 1994 Jeep Cherokee.

5           During primary inspection, the Customs & Border

6   Protection officer noticed the lack of crossing history of the

7   vehicle and referred it to secondary for further inspection.

8   That inspection revealed 55 bundles of marijuana wrapped in

9   tape hidden beneath the dashboard and gas tank of the vehicle.

10  The total net weight of the marijuana was 46.13 kilograms.

11          After waiving his Miranda rights, the defendant stated

12  that he knew the vehicle was loaded with an illegal drug.  The

13  defendant was instructed to drive the vehicle to Fox Plaza

14  shopping mall where he was supposed to leave the vehicle.  The

15  defendant agreed to drive the vehicle into the United States

16  because he was promised 1,000 U.S. dollars.

17          THE COURT:  Mr. Sandoval, are those facts true?

18          DEFENDANT SANDOVAL:  Yes, sir.

19          THE COURT:  Let me hear Mr. Dominguez.

20          MR. FRANCO:  Your Honor, the government would show

21  that on or about January 6, 2008, defendant entered the United

22  States from Mexico at the Bridge of the Americas Port of Entry,

23  which is located in the Western District of Texas.  The

24  defendant was the driver and sole occupant of a 1989 GMC pickup

25  truck.

11:35   1          During primary inspection, the CBP officer noticed

2       that the sides of the truck felt unusually rigid and referred

3       the vehicle to secondary for further inspection.  That

4       inspection revealed 52 bundles of marijuana hidden within the

5       rear quarter panels and dashboard of the vehicle.  The total

6       net weight of the marijuana was 22.9 kilograms.

7          After waiving his Miranda rights, the defendant

8       admitted that he knew the vehicle was loaded with marijuana.

9       He agreed to drive the marijuana-laden vehicle into the

10      United States because he was promised 1,000 U.S. dollars.  He

11      had planned to deliver the vehicle to an unidentified

12      individual at a store on McCombs Drive in El Paso for removal

13      of the marijuana.

14          THE COURT:  Mr. Dominguez, are those facts true?

15          DEFENDANT DOMINGUEZ:  Yes, Your Honor.

16          THE COURT:  Let me hear the allegations -- excuse me,

17      the factual basis of the allegations against Mr. Ramirez,

18      please.

19          MR. FRANCO:  Your Honor, the government would show

20      that on or about December 16, 2007, the defendant entered the

21      United States from Mexico at the Ysleta Port of Entry located

22      in the Western District of Texas.  The defendant was the driver

23      and sole occupant of a 1986 Chevrolet Caprice.

24          During primary inspection, the Customs & Border

25      Protection officer noticed that the gas tank did not appear to

11:36   1   be hollow and referred the vehicle to secondary for further
       2   inspection.  That inspection revealed 84 bundles of marijuana
       3   wrapped in tape, hidden in the tires and gas tank of the
       4   vehicle.  The total net weight of the marijuana was 37.17
       5   kilograms.
       6            After waiving his Miranda rights, the defendant stated
       7   that he was offered $1,000 to drive a vehicle that he thought
       8   contained drugs into the United States.  The defendant stated
       9   that he knew the vehicle was loaded with marijuana.
      10            THE COURT:  Mr. Ramirez, are those facts true?
      11            DEFENDANT RAMIREZ:  Yes, sir.
      12            THE COURT:  Let me hear Mr. Bastedas, please.
      13            MR. FRANCO:  Your Honor, the government would show
      14   that on or about December 20, 2007, defendant, along with
      15   Daniel Adrian Larranaga, entered the United States from Mexico
      16   at the Ysleta Port of Entry located in the Western District of
      17   Texas.  The defendant was the driver of a 1991 Chevy pickup
      18   truck, and Mr. Larranaga was the passenger of the vehicle.
      19            During primary inspection, the defendant appeared to
      20   be nervous and was referred to secondary for further
      21   inspection.  That inspection revealed 16 bundles of marijuana
      22   concealed in the tires of the vehicle.  The total net weight of
      23   the marijuana was 85.17 kilograms.
      24            After waiving his Miranda rights, the defendant stated
      25   that he and the other individual were to be paid $2,000 to

11:38   1   drive an unknown amount of marijuana into the United States

2   from Mexico.  They were to return to Mexico after delivering

3   the vehicle and split the money.

4           THE COURT:  Mr. Bastedas, are those facts true?

5           DEFENDANT BASTEDAS:  Yes, sir.

6           THE COURT:  Let me hear Mr. Estrella's, please.

7           MR. FRANCO:  Your Honor, the government would show

8   that on or about January 15, 2008, the defendant attempted to

9   enter the United States at the Paso Del Norte Port of Entry

10   located in the Western District of Texas by trying to

11   circumvent the primary inspection booth and eluding inspection

12   by U.S. officials.

13           It was determined through immigration records and/or

14   an interview with the defendant that the defendant was an alien

15   to the United States and a citizen and native of Mexico.

16   Immigration records reflect that the defendant was removed

17   through El Paso, Texas, on June 22, 2007.  Immigration records

18   also reflect that defendant has not received the consent of the

19   Attorney General or the Secretary of Homeland Security to

20   re-apply for admission into the United States.

21           THE COURT:  Mr. Estrella, are those facts true?

22           DEFENDANT ESTRELLA:  Yes, sir (In English).

23           THE COURT:  Let me hear Mr. Madrigal, please.

24           MR. FRANCO:  Your Honor, the government would show

25   that on or about January 13, 2008, the defendant attempted to

11:39  1   enter the United States at the Paso Del Norte Port of Entry
       2   located in the Western District of Texas by presenting a form
       3   DSP-150 border crossing card bearing the name and photograph of
       4   another individual to the Customs & Border Protection officers.
       5   It was determined through immigration records and/or an
       6   interview with the defendant that he was an alien to the United
       7   States and a citizen and native of Mexico.
       8          Immigration records reflect that the defendant was
       9   removed from Nogales, Arizona, on October 26, 1995.
      10   Immigration records also reflect that the defendant has not
      11   received the consent of the Attorney General or the Secretary
      12   of Homeland Security to re-apply for admission into the United
      13   States.
      14          THE COURT:  Mr. Madrigal, are those facts true?
      15          DEFENDANT MADRIGAL:  Yes, sir.
      16          THE COURT:  Let me hear Mr. Rodriguez', please.
      17          MR. FRANCO:  Your Honor, the government would show
      18   that on or about January 11, 2008, the defendant, along with
      19   another individual, applied for admission into the United
      20   States from Mexico at the Ysleta Port of Entry located in the
      21   Western District of Texas.  The defendant was the driver of a
      22   1985 Mazda pickup truck.
      23          During primary -- during a preprimary inspection, the
      24   agents discovered a nonfactory compartment in the vehicle.
      25   That compartment contained 51 tape-wrapped bundles of

11:40   1   marijuana.  The approximate net weight of the marijuana was

2   26.55 kilograms.

3            After waiving his Miranda rights, the defendant

4   admitted that he knew there was marijuana concealed in the

5   vehicle.  He explained that he was instructed to drop the car

6   off at a Checker's Auto Parts store located on North Loop and

7   Horizon Boulevard in El Paso, Texas.  He further stated that he

8   was to be paid $800 upon his return to Juarez, Mexico.

9            THE COURT:  Mr. Rodriguez, are those facts true?

10            DEFENDANT RODRIGUEZ:  Yes, sir.

11            THE COURT:  Mr. Rodriguez, to count one of the

12   indictment in your case, how do you plead, guilty or not

13   guilty?

14            DEFENDANT RODRIGUEZ:  Yes, sir.

15            THE COURT:  To count one of the indictment in your

16   case, how do you plead, guilty or not guilty?

17            DEFENDANT RODRIGUEZ:  Yes, sir.

18            (Consultation off the record.)

19            DEFENDANT RODRIGUEZ:  Guilty or not guilty?

20            THE COURT:  That's the question I have for you.  Do

21   you understand what the government is saying you did wrong?  Do

22   you understand that?

23            DEFENDANT RODRIGUEZ:  Yes, sir, guilty.

24            THE COURT:  Mr. Madrigal, to the indictment in your

25   case, how do you plead, guilty or not guilty?

11:41  1              DEFENDANT MADRIGAL:  I plead guilty, sir.

       2              THE COURT:  Mr. Estrella, to the indictment in your

       3    case, how do you plead, guilty or not guilty?

       4              DEFENDANT ESTRELLA:  I am guilty (In English).

       5              THE COURT:  Mr. Bastedas, to count one of the

       6    indictment in your case, how do you plead, guilty or not

       7    guilty?

       8              DEFENDANT BASTEDAS:  Guilty, Your Honor.

       9              THE COURT:  Mr. Dominguez, to count one of the

      10    indictment in your case, how do you plead, guilty or not

      11    guilty -- excuse me, Mr. Ramirez, to count one of the

      12    indictment in your case, how do you plead, guilty or not

      13    guilty?

      14              DEFENDANT RAMIREZ:  Guilty, Your Honor.

      15              THE COURT:  Mr. Dominguez, to count one of the

      16    indictment in your case, how do you plead, guilty or not

      17    guilty?

      18              DEFENDANT DOMINGUEZ:  Guilty, Your Honor.

      19              THE COURT:  Mr. Sandoval, to count one of the

      20    indictment in your case, how do you plead, guilty or not

      21    guilty?

      22              DEFENDANT SANDOVAL:  Guilty, sir.

      23              THE COURT:  Mr. Arzate, to the indictment in your

      24    case, how do you plead, guilty or not guilty?

      25              DEFENDANT ARZATE:  Guilty.

11:42  1            THE COURT:  I find that each one of you is pleading

2      guilty freely and voluntarily.  I further find that you

3      understand the allegations the government is making against you

4      and the possible penalties you face by pleading guilty to those

5      allegations.  I find that you understand your rights, that you

6      knowingly waive your rights, that you are competent to enter

7      your plea of guilty, and that there is a factual basis for your

8      plea of guilty, and I am accepting each of your pleas of guilty

9      at this time.

10            Who are the probation officers assigned to prepare the

11     presentence reports in these eight cases?

12            PROBATION OFFICER:  Good morning, Your Honor.  Esau

13     Hernandez for U.S. Probation.  Arturo Zarate [sic] --

14            THE COURT:  Arzate.

15            PROBATION OFFICER:  Arzate, I'm sorry.  Sonia Lujan

16     will be doing the PSR, a full PSR.

17            Eduardo Sandoval Escarzaga, the probation officer will

18     be Sam Hernandez, and it is a full PSR; Samuel Dominguez, Jr.,

19     Emilia Caro-Sanchez; Esteban Ramirez-Pena, Noemi Ramos; Carlos

20     Aaron Bastedas-Chacon, Noemi Ramos; Abraham Estrella-Moreno,

21     Norma Castro; Salvador Madrigal-Escamilla, Marisela Paniagua;

22     Jesus Rodriguez-Saucedo, Salvador Madrid.

23            They are all full PSRs.

24            THE COURT:  All of them are full PSRs; is that

25     correct?

11:44  1           PROBATION OFFICER:  Yes, Your Honor.

       2           THE COURT:  Very well.  Adriana, go ahead and set

       3   these cases for sentencing, please.

       4           THE CLERK:  June 17th at 9:00 for all defendants.

       5           THE COURT:  Very well.  Is there anything else that we

       6   need to take up, counsel?

       7           MS. ROMERO:  No, Your Honor.

       8           MR. HOLGUIN:  No, Your Honor.

       9           MR. FRANCO:  No, Your Honor.

      10           MS. RODRIGUEZ:  No, Your Honor.

      11           THE COURT:  Court is adjourned.  You all take care.

      12                       *  *  *  *  *  *

      13           I certify that the foregoing is a correct transcript

      14   from the record of proceedings in the above-entitled matter.  I

      15   further certify that the transcript fees and format comply with

      16   those prescribed by the Court and the Judicial Conference of

      17   the United States.

      18

      19   Signature: /s/Nalene Benavides      Date:  August 6, 2008
                       Nalene Benavides, RMR, CRR
      20

      21

      22

      23

      24

      25